**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramiro Bustamante,<br><br>Petitioner,<br><br>vs.<br><br>Michael Valenzuela, et al.,<br><br>Respondents. | No. CV 09-8192-PCT-ROS (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE ROSLYN O. SILVER, UNITED STATES DISTRICT JUDGE:

Petitioner Ramiro Bustamante ("Petitioner"), who is confined in the Coconino County Detention Facility, in Flagstaff, Arizona, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 25 U.S.C. § 1303 and 28 U.S.C. § 2241. (Doc. #1.) On November 3, 2009, the Court granted Petitioner's request for appointment of counsel, and appointed the Federal Public Defender for the District of Arizona to represent Petitioner in this case. (Doc. #7.) On December 3, 2009, Respondent Michael Valenzuela ("Respondent") filed an Answer to Petitioner's Petition. (Doc. #24.)[1]

\\\
\\\
\\\

---

[1] Respondents Vincent Anchando and Kurt Braatz also filed Answers to Petitioner's Petition. (Docs. ##21, 23.) In their Answers, both Respondents essentially contend that they are not proper respondents. (Docs. ##21, 23.) Neither Petitioner nor Respondent asserts otherwise.

**BACKGROUND**

Petitioner is an enrolled member of the Pascua Yaqui Tribe (the "Tribe"). (Doc. #1 at 1.) On March 18, 2009, Petitioner was arrested in connection with an incident at his parents' home, located on the Pascua Yaqui Indian Reservation. (Doc. #1 at 4.) Namely, Petitioner's mother caught Petitioner taking items from a camper in the backyard of his parents' residence and Petitioner refused to leave after being told to do so. (Doc. #1 at 4.) Prior to this incident, a Pascua Yaqui Tribal Court had ordered Petitioner to stay away from his parents' home and Petitioner did not have permission to be there on March 18. (Doc. #1 at 4.)

The same day, the Tribe filed a four-count complaint against Petitioner in Tribal Court for: (1) domestic violence, burglary by entering his parents' property with the intent to commit a crime; (2) domestic violence, theft, by taking items from the camper located in his parents' backyard and refusing to leave when told to do so; (3) domestic violence, criminal trespass, by remaining at his parents' home after being told to leave; and (4) disobedience to a lawful court order by going to his parents' house. (Doc. #1 at 4.) Petitioner was arraigned the same day. (Doc. #1 at 5.) At his arraignment, Petitioner pled guilty to three of the four counts, and the fourth count was set for trial. (Doc. #1 at 5.)

On March 30, 2009, a public defender entered an appearance on behalf of Petitioner and sentencing was reset to April 22, 2009. (Doc. #1 at 5.) On April 22, 2009, Petitioner was sentenced to nine months in jail on Count 1 to be served immediately; nine months in jail on Count 2 to be served consecutive to the sentence for Count 1; and nine months in jail on Count 4 to be served concurrently with the sentence for Count 1. (Doc. #1 at 6.) The Tribal Court set Petitioner's release date as September 18, 2010. (Doc. #1 at 6.) It dismissed Count 3 with prejudice. (Doc. #1 at 6.)

Petitioner filed a notice of appeal on April 23, 2009, alleging as his sole claim for relief a violation of 25 U.S.C. § 1302(7) of the Indian Civil Rights Act ("ICRA"). (Doc. #1 at 3.) The Tribe allegedly failed to file a timely response. (Doc. #1 at 3.) On August 14,

2009, Petitioner filed a motion for decision on the record and filed a second motion on September 4, 2009. (Doc. #1 at 3.) On October 14, 2009, the Pascua Yaqui Court of Appeals denied Petitioner's appeal as "frivolous" because the claim for relief was foreclosed by a prior decision of the court. (Doc. #1 at 3.) According to Petitioner, no other judicial remedies remain available to him in Tribal Courts. (Doc. #1 at 4.)

Accordingly, on October 23, 2009, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 25 U.S.C. § 1303 and 28 U.S.C. § 2241. (Doc. #1.) Petitioner alleges one ground for relief. (Doc. #1 at 7.) He challenges his sentence as violating 25 U.S.C. § 1302(7), which prohibits any Indian tribe exercising the powers of self-government from imposing punishment for a term of more than one year in connection with a single criminal transaction. (Doc. #1 at 7.) Petitioner contends that his conviction involves a single criminal transaction and that his sentence is therefore excessive. (Doc. #1 at 7.) He further contends that had the Tribal Court sentenced him to a total of one year, his term of incarceration would expire on March 18, 2010. (Doc. #1 at 7.) On December 3, 2009, Respondent filed an Answer to Petitioner's Petition (Doc. #24).

Additionally, on December 3, 2009, Respondent filed a Motion for Summary Judgment, Memorandum of Law in Support of Motion, and Statement of Facts in Support of Motion. (Docs. ##26, 27, 28.) On December 9, 2009, Petitioner, through counsel, filed a Response and Cross-Motion for Summary Judgment, Controverting Statement of Facts in Support of Petitioner's Response, and Statement of Facts in Support of Petitioner's Cross-Motion. (Docs. ##29, 30.) Thereafter, Respondent filed his Response to Cross-Motion, Reply in Support of Motion, and Controverting Statement of Facts. (Docs. ##34, 35.) Then, on December 30, 2009, Petitioner filed a Reply in Support of Cross-Motion. (Doc. #36.)

**DISCUSSION**

In their pleadings, the parties do not dispute the fact that the Tribal Court imposed an 18-month sentence in Petitioner's case, or that the Pascua Yaqui Court of Appeals ruled on the merits of the same claim on which Petitioner is seeking relief in this Court. Thus, the

1 parties agree that there are no genuine issues of material fact in dispute, and that this case is
2 properly resolved on a motion for summary judgment. The legal issues before the Court are:
3 (1) whether Petitioner exhausted his remedies in the Tribal Courts before filing a federal
4 habeas petition, and (2) whether the sentence imposed against Petitioner in the Tribal Court
5 is lawful under 25 U.S.C. § 1302(7).

**A.    Exhaustion**

With respect to the exhaustion issue, Petitioner states that the Tribe's highest court has already definitively ruled on his claim, labeling his appeal "frivolous" because the same issue was decided in Pascua Yaqui Tribe v. Miranda, CA-08-015 (2009) (Pascua Yaqui Court of Appeals). Thus, Petitioner alleges that to the extent a habeas petition in the Pascua Yaqui Court of Appeals may be available to him, it would be an ineffective and meaningless procedure since the pertinent decision-making body has already rejected Petitioner's attempt to seek relief on the same claim.

Respondent contends that Petitioner's Petition should be denied because Petitioner failed to exhaust his remedies in the Tribal Courts. Specifically, Respondent asserts that Petitioner was required to seek a writ of habeas corpus before the Pascua Yaqui Court of Appeals to satisfy the exhaustion requirement. In support of his assertion, Respondent argues pursuant to the Pascua Yaqui Tribal Codes that the Pascua Yaqui Court of Appeals shall consist of three judges, one of whom shall be the Chief Justice. Respondent also cites to the Pascua Yaqui Rules of Appellate Procedure, which contemplate a decision by a "majority" and allow for a Petitioner to request a writ of habeas corpus. Lastly, in furtherance of the proposition that Petitioner's resort to further remedies in the Tribal Courts would not be futile, Respondent seeks to analogize the Tribe's habeas corpus procedure to the Court of Appeals for the Ninth Circuit's procedure for *en banc* review stating that matters appealed to the Ninth Circuit for hearing *en banc* are not always resolved in the same way that they were initially decided by the three-judge panel.

Although the parties do not cite a statutory exhaustion requirement in this context, the Supreme Court has determined that exhaustion of tribal court remedies is important to the

"federal policy of promoting tribal self-government ... ." Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 16-17 (1987). Further, the Court has recognized that development of a full record in a Tribal Court will promote the orderly administration of justice in the federal court. See National Farmers Union Ins. Companies v. Crow Tribe of Indians, 471 U.S. 845, 856 (1985). The federal court should therefore "stay[] its hand until after the Tribal Court has had a full opportunity ... to rectify any errors it may have made." Id. at 857. "At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." Iowa Mut. Ins. Co., 480 U.S. at 17.

Exhaustion of Tribal Court claims, however, is not an inflexible requirement. See Selam v. Warm Springs Tribal Correctional Facility, 134 F.3d 948, 953 (9th Cir. 1998) (citing United States ex rel. Cobell v. Cobell, 503 F.2d 790 (9th Cir. 1974)). As the Cobell court explained:

> A balancing process is evident; that is weighing the need to preserve the cultural identity of the tribe by strengthening the authority of the tribal courts, against the need to immediately adjudicate alleged deprivations of individual rights. Thus, this Court must determine whether exhaustion is appropriate in the case at bar.

Cobell, 503 F.3d at 793 (quoting O'Neal v. Cheyenne River Sioux Tribe, 482 F.2d 1140, 1146 (8th Cir. 1973)).

Applying these balancing principles here, the Court finds that Petitioner has satisfied the exhaustion requirement. Petitioner presented his 25 U.S.C. § 1302(7) claim to the Pascua Yaqui Court of Appeals, the tribe's highest court, and Chief Justice James C. Hopkins rejected it as "frivolous" stating, "the appeal raises no question of law not already decided by this Court in *Pascua Yaqui Tribe v. Miranda*, CA-08-015 (2009)." (Doc. #30, Exh. A.) Since the Pascua Yaqui Court of Appeals has already rejected this claim more than once, presenting it again as a writ of habeas corpus before the Pascua Yaqui Court of Appeals would be an exercise in futility.

Respondent's citations to the Pascua Yaqui Tribal Codes and the Pascua Yaqui Rules of Appellate Procedure to support his argument are unpersuasive. First, the Court notes that the provision of the Code to which Respondent refers simply specifies the total membership

of the court – it says nothing about how many judges may exercise the power of the court in particular cases. (Doc. #34 at 11) (citing 3 Pascua Yaqui Tribal Code § 1-2-30.) From the Court's review of the record, neither the Tribal Codes nor the Rules of Appellate Procedure prohibits a single judge sitting on the Pascua Yaqui Court of Appeals from exercising the power of the Court of Appeals in issuing precedential opinions.

Respondent also points to Rule 22(A) of the Pascua Yaqui Rules of Appellate Procedure. Rule 22(A), however, merely specifies that the Pascua Yaqui Court of Appeals shall dispose of matters by opinion when "a majority of the justices acting" determine that enumerated factors are present. (Doc. #30, Exh. B at 11-12.) Because it is clear from the record that an individual judge may exercise the power of the Pascua Yaqui Court of Appeals, the phrase "majority of the justices acting" must be construed to cover situations in which a single justice is acting. Further, Rule 25 of the Pascua Yaqui Rules of Appellate Procedure relating to habeas corpus petitions cited by Respondent simply identifies the procedures for filing such petitions – it does not mandate that a petitioner file a habeas petition or does it specify that a panel reviewing such a petition is empowered to overturn the Pascua Yaqui Court of Appeals' precedential opinions. (Doc. #30, Exh. B at 13.)

Finally, Respondent seeks to analogize the Tribe's habeas corpus procedure to the Ninth Circuit's procedure for *en banc* review. The power of the Ninth Circuit when sitting *en banc* to overturn its prior panel decisions is specifically enumerated in the Federal Rules of Appellate Procedure and the Ninth Circuit's Rules. <u>See</u> FRAP 35; 9th Cir. R. 35-1, 35-2, 35-3. The Pascua Yaqui Rules of Appellate Procedure contain no procedure for *en banc* review, and they do not specify that any three-judge panel is automatically deemed an "*en banc*" panel – empowered to overturn the Pascua Yaqui Court of Appeals' precedential opinions issued by single judges. (Doc. #30, Exh. B.)

Moreover, as the court stated at Doc. #46 in <u>Beatrice Miranda v. Tracy Nielsen, et al.</u>, No. CV-09-8065-PCT-PGR (ECV) when addressing the same issue, "even the strict exhaustion requirements for habeas petitions under 28 U.S.C. § 2254 do not require a petitioner to present on collateral review to a state court the same claims already raised on

- 6 -

1 direct review. The court will not impose such a requirement here." For these reasons, the Court finds that Petitioner has satisfied the exhaustion requirement. The Court will, therefore, consider the merits of Petitioner's claim.

**B.     Merits**

Petitioner, applying the reasoning set forth in Spears v. Red Lake Band of Chippewa Indians, 363 F.Supp.2d 1176 (D. Minn. 2005), argues that the charges against him arose from "a single criminal transaction" as they involved a common nucleus of operative fact and were factually and legally intertwined. As such, Petitioner contends that his sentence violates the sentencing limitation of 25 U.S.C. § 1302(7) as it exceeds one year for acts arising out of a single criminal transaction.

Respondent first claims that the term "any one offense" set forth in 25 U.S.C. § 1302(7) is unambiguous and clearly encompasses separate offenses arising out of the same set of facts. Then, in citing Ramos v. Pyramid Tribal Court, 621 F.Supp. 967 (D. Nev. 1985), Respondent asserts that Petitioner's sentence was lawful since 25 U.S.C. § 1302(7) authorizes up to one year in prison for each separate offense and does not contain a prohibition on consecutive sentences for separate offenses.

Under the ICRA, "[n]o Indian tribe in exercising powers of self-government shall ... impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of one year ... ." 25 U.S.C. § 1302(7). The interpretation of a federal statute is a matter of federal law. See McInnes v. California, 943 F.2d 1088, 1094 (9th Cir. 1991).

The previously cited case in this District, Beatrice Miranda v. Tracy Nielsen, et al., No. CV-09-8065-PCT-PGR (ECV), has addressed the precise issue before the Court. The foundation for the court's ruling in Miranda was derived from its analysis of Spears v. Red Lake Band of Chippewa Indians, 363 F.Supp.2d 1176 (D. Minn. 2005) and Ramos v. Pyramid Tribal Court, 621 F.Supp. 967 (D. Nev. 1985).

In Spears, the petitioner pled guilty to six criminal charges in Red Lake Tribal Court, including negligent homicide; driving under the influence of alcohol; failing to take a blood,

breath or urine test; failing to stop at the scene of a traffic accident; and two minor violations.[2] See id. at 1176-77. Each charge arose from an incident in which the petitioner – driving while intoxicated – struck and killed a person lying on the road. See id. The tribal court sentenced the petitioner to consecutive sentences on the four more serious violations that totaled 30 months. See id. at 1177. After exhausting his tribal appeals, the petitioner filed a habeas petition in federal court claiming that his sentence violated 25 U.S.C. § 1302(7) of the ICRA, which limits tribal court prison sentences to 12 months for conviction of "any one offense." Id.

The court first looked at the language of the statute and found that the phrase "any one offense" is ambiguous. See id. at 1178. To demonstrate that similar language has given rise to controversy and confusion in other contexts, the court examined Supreme Court cases dealing with the Fifth and Sixth Amendments illustrating how "any one offense" could mean either "any discrete violation of the Tribal Code" or "any prosecution arising from a single criminal transaction or episode." Id. at 1178-79. After determining that "any one offense" is subject to more than one interpretation, the court examined congressional intent in an effort to construe 25 U.S.C. § 1302(7) in a manner that "effectuate[s] the underlying purposes of the law." Id. at 1179 (quoting United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000)).

The court considered the ICRA history and its underlying purposes. See id. at 1179. First, examining the history, the court explained that because many tribes were not prepared to extend the full range of federal constitutional rights to their members, the ICRA affords only a limited set of rights. See id. Among the rights not afforded under the ICRA is publicly funded counsel for criminal defendants in tribal court. See id. Thus, the original version of the ICRA in 1968 limited the maximum sentence in tribal court to six months,

---

[2] The petitioner was also charged with involuntary manslaughter in federal court, where he pled guilty and received a 14-month sentence in prison. See id. at 1176-77.

- 8 -

with no guarantee of an appointed lawyer. See id. A subsequent amendment in 1986 increased the maximum sentence to one year. See id.

In discussing the purpose of the ICRA, the court stated that in 1968 Congress knew that under the Major Crimes Act, Indians facing prosecution for serious charges in federal court received the full range of constitutional rights. See id. at 1180. As the court explained:

> Taken together, the ICRA and the Major Crimes Act created a balanced and logical regime: Indians accused of minor crimes faced minor penalties in tribal court where some constitutional rights were withheld; Indians accused of serious crimes faced serious penalties in federal court where all constitutional rights were available.

Id. The court found, however, that this balance could be maintained only if "any one offense" is interpreted to mean "a single criminal transaction." Id. To do otherwise would expose tribal court defendants to serious sentences without the guarantee of all their constitutional rights. See id. For these reasons, the court determined "that Congress intended to adopt the concept that separate crimes arising from a single criminal episode should normally be treated as a single offense for sentencing purposes." Id. at 1181. The court therefore interpreted the phrase "any one offense" to mean "a single criminal transaction." Id.

The court then applied this analysis to determine if the petitioner's violations were part of "a single criminal transaction." Id. The court determined that the petitioner's charges arose from a "common nucleus of operative fact surrounding his ill-fated drive on April, 1, 2000" and were therefore factually intertwined. Id. The court further found that the charges were legally intertwined. Id. As a result, the court concluded that "the violations underlying petitioner's tribal court sentence are facets of a single criminal event." Id. at 1182. Accordingly, the court held that the 30-month sentence imposed by the tribal court exceeded the maximum sentence permitted for "one offense." Id. The court granted the habeas petition and remanded the matter to the tribal court. See id.

In Ramos, the petitioner was convicted in the Pyramid Lake Tribal Court of several violations arising from the same incident and sentenced to consecutive sentences that totaled more than two years. See 621 F.Supp. at 968. The petitioner filed a habeas petition in

1  federal court arguing, *inter alia*, that his sentence constituted cruel and unusual punishment
2  in violation of the ICRA. See id. at 970. In deciding the cruel and unusual punishment
3  question, the court considered whether the sentence exceeded the one year maximum allowed
4  by 25 U.S.C. § 1302(7). See id. With limited analysis, the court determined that the tribal
5  court's imposition of consecutive sentences did not constitute cruel and unusual punishment.
6  See id. The court indicated that it "could find no cases holding that the imposition of
7  consecutive sentences constitute[d] cruel and unusual punishment" and noted that "the
8  imposition of consecutive sentences for numerous offenses is a common and frequently
9  exercised power of judges." Id. The court, however, did not analyze the question of whether
10 the petitioner's several violations constituted "one offense" for sentencing purposes under
11 § 1302(7).

Having analyzed both Spears and Ramos, the Miranda court found the reasoning of the Spears case persuasive and, as such, adopted its holding. Specifically, the court stated:

> In light of the history and purpose behind the passage of the ICRA in 1968, the court is convinced that Congress did not intend to allow tribal courts to impose multiple consecutive sentences for criminal violations arising from a single transaction. To hold otherwise would expose a tribal court defendant to a lengthy prison term without the protection of representation by counsel and other critical constitutional rights. The circumstances surrounding the passage of the ICRA clearly demonstrate that in return for alleviating the tribes of the burden of extending every federal constitutional right to its members, Congress intended to significantly limit the sentence that a tribal court can impose. Therefore, like the Spears court, the court here finds that the phrase "any one offense" in § 1302(7) of the ICRA means "a single criminal transaction."

Beatrice Miranda v. Tracy Nielsen, et al., No. CV-09-8065-PCT-PGR (ECV), Doc. #46 at 7. This Court agrees, finding that "any one offense" necessarily means "a single criminal transaction," and furthermore finds, similar to the charges in Spears and Miranda thereafter, that Petitioner's actions in this case constitute a single criminal transaction. Specifically, all of the charges against Petitioner arose from a single incident, in which he took some household items from a camper in his mother's backyard, then refused to leave when asked to do so. All of the charges relating to this single incident involved a common nucleus of operative fact and were factually and legally intertwined.

Although Respondent argues that this Court's adoption of the reasoning set forth in Spears would lead to a "strange and untenable situation in which the phrase 'one offense' committed by an Indian is defined one way in federal courts ... and an entirely different way on Tribal reservations throughout the country," the Court is not persuaded as Respondent has failed to substantiate that tribal courts on "reservations throughout the country" uniformly agree with his interpretation of 25 U.S.C. § 1302(7). In any event, this Court is not required to defer to a tribal court in resolving an issue of federal law.

Respondent also seeks support for his construction of § 1302(7) in United States v. Antelope, 430 U.S. 641 (1977), and United States v. Mitchell, 502 F.3d 931 (9th Cir. 2007). The Court finds that these decisions have no relevance here. Antelope involved the issue of whether the Major Crimes Act violated the Due Process Clause of the Fifth Amendment "by subjecting individuals to federal prosecution by virtue of their status as Indians." Antelope, 430 U.S. at 642. Mitchell involved a number of statutory and constitutional challenges to a conviction and death sentence imposed in a case brought under the Major Crimes Act. See Mitchell, 502 F.3d at 946-97. Neither of these cases involved any issue regarding a statute's use of the term "one offense."

Finally, in further support of his position, Respondent states that "[s]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." The Court, however, finds that the "benefit" to Indians that Congress had in mind when it enacted the ICRA was the protection of individual Indians against the infringement of their civil rights by tribal governments. See 25 U.S.C. § 1302. As the Spears court observed, it would hardly advance this "benefit" to allow Indians to be subjected to multi-year sentences imposed by courts in which they are not guaranteed the right to appointed counsel. See Spears, 363 F.Supp.2d at 1180.

Thus, by finding that Petitioner's charges arose from "a single criminal transaction," the Court concludes that Petitioner's sentence of 18 months exceeded the 12-month maximum permitted by the ICRA.[3]

Accordingly, the Court will recommend that Petitioner's Petition be granted and that this matter be remanded to the Pascua Yaqui Tribal Court for re-sentencing.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Doc. #26) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Petitioner's Cross-Motion for Summary Judgment (Doc. #29) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion to Expedite Ruling on Cross-Motion for Summary Judgment (Doc. #31) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 25 U.S.C. § 1303 and 28 U.S.C. § 2241 (Doc. #1) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that this matter be remanded to the Pascua Yaqui Tribal Court for re-sentencing.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114,

---

[3] This Report and Recommendation should not be construed to mean that a tribal court is prohibited from imposing consecutive sentences that exceed a total of one year in prison when a defendant is involved in more than one criminal transaction.

1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. <u>See</u> Fed.R.Civ.P. 72.

DATED this 3rd day of February, 2010.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge