1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9    Ramiro Bustamante,              )    CV-09-8192-PCT-ROS
                                     )
10                Petitioner,        )    **ORDER**
                                     )
11   vs.                             )
                                     )
12                                   )
     Michael Valenzuela, et al.,     )
13                                   )
                  Respondents.       )
14                                   )
                                     )
15   ─────────────────────────────────

16        Pending before the Court is a Report and Recommendation ("R&R") issued by

17   Magistrate Judge Michelle Burns.  For the following reasons the R&R will be adopted in part

18   and rejected in part.

19                            **BACKGROUND**

20        Petitioner is an enrolled member of the Pascua Yaqui Tribe.  On March 18, 2009,

21   Petitioner's mother caught Petitioner taking items from a camper in the backyard of his

22   parents' residence and Petitioner refused to leave after being told to do so.  Based on these

23   events, the Pascua Yaqui Tribe filed a four-count complaint against Petitioner.  The

24   complaint alleged (1) domestic violence, burglary; (2) domestic violence, theft; (3) domestic

25   violence, criminal trespass; and (4) disobedience to a lawful court order.[1]  Petitioner was

26

27   ───────────────

28        [1] A Pascua Yaqui Tribal Court had previously ordered Petitioner to stay away from
     his parents' home.

arraigned on these four counts that same day. At his arraignment, Petitioner signed a document stating he waived his right to counsel. Petitioner pled guilty to all four counts but later withdrew his guilty plea regarding count three. (Doc. 24-1 at 9). The tribal court scheduled a sentencing hearing for the three counts and a pre-trial hearing on count three for a future date. Petitioner obtained counsel shortly after his initial appearance.

At the sentencing hearing on the three counts, the tribal court found Petitioner had a "substantial history of offenses," and a "substantial history [of] failure to appear and of failures to comply." (Doc. 24-1 at 19). Based on these findings, the trial court sentenced Petitioner to nine months in jail for count one; nine months in jail for count two to be served consecutive to the sentence for count one; and nine months in jail for count four to be served concurrently with the sentence for count one. Count three was dismissed with prejudice. Thus, Petitioner was sentenced to a total of eighteen months.

Petitioner appealed his sentence to the Pascua Yaqui Tribe Court of Appeals. The only issue in the appeal was the legality of sentencing Petitioner to more than one year of imprisonment. According to Petitioner's reading of the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302(7), the tribe did not have the authority to impose a sentence of more than one year imprisonment in connection with a "single criminal transaction." (Doc. 1 at 6). Because all of the crimes at issue arose from the events of March 18, Petitioner argued his eighteen month sentence was illegal. The appellate court denied the appeal based on its recent decision in another case that ICRA only prohibited sentences of more than one year for each discrete criminal act. Because Petitioner's eighteen month sentence stemmed from two discrete criminal acts, the appellate court determine ICRA's one-year limitation did not apply. Petitioner now seeks a writeof habeas corpus based on this same issue of permissible prison sentences under ICRA.

**ANALYSIS**

**A.  Jurisdiction**

Petitioner is challenging the legality of the detention imposed by an Indian tribe. Pursuant to 25 U.S.C. § 1303, the Court has jurisdiction to hear this suit. ("The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe.").

**B.  Petitioner Exhausted His Claims**

In opposing Petitioner's request for a writ of habeas corpus, Respondents first argue Petitioner failed to exhaust his tribal remedies.  In particular, Respondents claim Petitioner did not seek a writ of habeas corpus with the Pascua Yaqui Court of Appeals after the denial of his direct appeal.  Despite this failure, Magistrate Judge Burns found Petitioner had exhausted his remedies.  Magistrate Judge Burns concluded Petitioner's request for a writ of habeas corpus "would [have been] an exercise in futility" in that it would have been presented to the same court that had already rejected the sole basis for relief in Petitioner's direct appeal.  (Doc. 40 at 5).  Respondents object to this finding, but do not specify the precise flaw in Magistrate Judge Burns' reasoning.

Generally, individuals are required to exhaust their claims with the appropriate tribal court before turning to federal court. *See, e.g.*, *Selam v. Warm Springs Tribal Corr. Facility*, 134 F.3d 948, 953 (9th Cir. 1998).  But this is not an inflexible requirement.  A court must weigh "the need to preserve the cultural identity of the tribe by strengthening the authority of the tribal courts against the need to immediately adjudicate alleged deprivations of individual rights." *United States ex rel. Cobell v. Cobell*, 503 F.2d 790, 793 (9th Cir. 1974). In this case, the Pascua Yaqui Court of Appeals had recently issued a ruling on the precise issue Petitioner raised in his direct appeal.  Petitioner's appeal was denied based on that recent decision.  The only claim Petitioner would have raised in his habeas petition was the same issue.  Thus, the tribal court was given the appropriate opportunity to exercise its authority and requiring Petitioner reargue a rejected claim would have been futile.  The need to immediately adjudicate Petitioner's rights easily outweighs any interest in requiring

Petitioner continue to assert a futile claim in the tribal court. The Court agrees with Magistrate Judge Burns that tribal remedies were exhausted.

## C. ICRA Does Not Forbid Petitioner's Sentence

This case turns on the proper interpretation of ICRA, in particular, the phrase in ICRA that an Indian tribe may not impose a term of imprisonment more than one year "for conviction of any one offense." 25 U.S.C. § 1302(7). Petitioner urges this language be interpreted such that "any one offense" refers to all acts arising from a common nucleus of facts, *i.e.* a single criminal transaction. Respondents argue the phrase "any one offense" should be interpreted as referring to any discrete violation of the criminal law. Magistrate Judge Burns adopted Petitioner's interpretation. This Court, however, concludes Respondents have offered the better statutory interpretation.

### i. Background Of ICRA

Interpretation of ICRA requires an understanding of the larger factual context in which ICRA's limitations apply. The starting point for the present inquiry is the Indian Major Crimes Act, passed by Congress in 1885. *United States v. Bruce*, 394 F.3d 1215, 1220 (9th Cir. 2005). That statute "placed under the jurisdiction of federal courts Indian offenders who commit[ed] certain specific major offenses." *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 203 (1978) *superseded by statute as stated in Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 848 (9th Cir. 2009). The Major Crimes Act did not affect tribal authorities' power to punish offenses other than those enumerated in the act. *Bruce*, 394 F.3d at 1220. Thus, before and after the Major Crimes Act, Indian tribes had the authority to imprison tribe members for more than one year upon conviction of a non-enumerated offense.[2]

Congress passed ICRA in 1968. ICRA placed limits on the exercise of tribal power. In particular, ICRA provided tribal courts could not "impose for conviction of any one

---

[2] The Court has been unable to locate any cases occurring after passage of the Major Crimes Act but before passage of ICRA involving a lengthy prison sentence imposed by an Indian Tribe.

- 4 -

offense any penalty or punishment greater than imprisonment for a term of one year."[3]  25 U.S.C. § 1302(7).  Thus, after ICRA an Indian tribe could not impose more than one-year imprisonment, regardless of the seriousness of the "one offense."  *See Tribal Courts and Federal Sentencing*, Keven K. Washburn, 36 Ariz. S. L.J. 403, 410 n.31 (2004) ("[A]lthough a tribe may indeed have the authority to prosecute one of its members for murder, federal law limits the tribal sentence to one year.").  Petitioner asserts ICRA's language should be read as limiting tribal authority such that no offender can receive more than one-year imprisonment for all factually related offenses.  Proper statutory interpretation defeats this claim.

**ii.  Statutory Construction Standards**

"The preeminent canon of statutory interpretation requires [a court] to presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).  All statutory construction "begins with the statutory text, and ends there as well if the text is unambiguous." *Id.*  Terms used in a statute must be evaluated based on their "ordinary meaning . . . at the time Congress enacted [the law]." *Id.*  When "Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." *Morissette v. United States*, 342 U.S. 246, 263 (1952).  Put more simply, when Congress uses a term, a court "must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of th[at] ter[m]." *NLRB v. Town and Country Elec., Inc.*, 516 U.S. 85, 94 (1995).  Given these precepts, the first issue is the ordinary meaning of the phrase "any one offense" at the time ICRA was adopted.  If this phrase had a settled meaning at that time, the Court must accept that meaning.

---

[3] The limitation originally was six months imprisonment but was increased to one year in 1986.  Anti-Drug Abuse Act of 1986, P.L. 99-570, § 4217.

### iii. ICRA Is Not Ambiguous

Prior to the enactment of ICRA, the Supreme Court had repeatedly addressed the meaning of the word "offense." Over the years, the Supreme Court had taken the consistent position that "offense" referred to any discrete criminal violation. For example, in 1852, the Court found an individual "by one act [had] committed two offences."[4] In 1915, the Court observed that every discrete violation of a statute was an offense.[5] And in 1932, the Supreme Court observed "[a] single act may be an offense against two statutes." Thus, the meaning of "offense" as any violation of the criminal law was well established long before passage of ICRA.[6] Petitioner has not identified *any* pre-1968 case interpreting "offense" as referring to all violations arising from a common nucleus of facts.

Given that ICRA does not contain a special definition of the term "offense," and based on the longstanding understanding of what qualifies as an "offense," a statute limiting punishment for "any one offense" is not ambiguous. *NLRB*, 516 U.S. at 94 (requiring court

---

[4] In *Moore v. Illinois*, 55 U.S. 13, 17 (1852), the Court addressed an individual who had been "indicted and convicted under the criminal code of Illinois for 'harboring and secreting a negro slave.'" The individual claimed he was being subject "to a double punishment for a single offence." The Court rejected this claim, finding that "by one act [the defendant had] committed two offences." *Id.* at 20.

[5] In *Ebeling v. Morgan*, 237 U.S. 625 (1915), the defendant had been charged with cutting into multiple mail bags. The defendant, "in the same transaction," had torn or cut multiple mail bags. *Id.* at 628. The issue for the Supreme Court was whether "the successive cuttings into the different bags constitute[d] different offenses." *Id.* After quoting from the statute prohibiting tampering with mail bags, the Court held "[w]henever any one mail bag is thus torn, cut, or injured, the offense is complete. Although the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described . . . ." *Id.*

[6] Lower courts routinely adopted the Supreme Court's construction. For example, in 1945, the Sixth Circuit observed "Congress may provide that separate steps in a single transaction shall constitute separate offenses. If offenses are distinct in law they are not identical, regardless of how closely they are connected in point of fact." *American Tobacco Co. v. United States*, 147 F.2d 93, 117 (6th Cir. 1945). And as late as 1967, little discussion was required to rule that multiple criminal acts committed in "one transaction" did not constitute one offense. *United States v. Bennett*, 383 F.2d 398, 399-400 (6th Cir. 1967).

infer Congress meant to adopt the "established meaning" of a term). ICRA's limitation of one-year imprisonment for "any one offense" means a tribe may impose a one-year term of imprisonment for each violation of a criminal statute. As it is undisputed that Petitioner committed multiple criminal violations, and that he was not sentenced to more than one year on any individual violation, his eighteen month sentence did not violate ICRA.

Despite what appears to be judicial clarity regarding the meaning of "offense," Petitioner cites to a decision from the District of Minnesota finding ICRA's use of the word "offense" ambiguous.[7] *Spears v. Red Lake Band of Chippewa Indians*, 363 F. Supp. 2d 1176 (D. Minn. 2005). The reasoning of the *Spears* court, however, is not persuasive. The *Spears* court began its analysis by finding that "any one offense" was ambiguous because "similar language has given rise to controversy and disagreement in other contexts." *Id.* at 1178. As evidence, the court cited to cases dealing with various constitutional amendments. Upon close inspection, the *Spears* court's reliance on those cases is misplaced.

The *Spears* court first looked to the Fifth Amendment. The Fifth Amendment contains a prohibition on multiple prosecutions "for the same offence." According to *Spears*, this language has "been subject to at least two reasonable interpretations: it could bar consecutive prosecutions for offenses arising out of the 'same evidence,' or it could bar consecutive prosecutions for offenses arising out of the 'same transaction.'" *Id.* at 1178. This statement is misleading. While it is theoretically possible to interpret "offense" in two ways, the Supreme Court has never adopted the "same transaction" meaning. *United States v. Dixon*, 509 U.S. 688, 709 n.14 (1993). In fact, the Supreme Court has been remarkably consistent in interpreting the Fifth Amendment's prohibition as allowing prosecution of "same transaction" offenses. To claim the word "offense" is ambiguous based on a

---

[7] Petitioner cites to two other court decisions adopting this view. *Miranda v. Nielsen*, No. CV-09-8065-PCT-PGR, 2010 WL 148218 (D. Ariz. 2010); *Romero v. Goodrich*, No. 1:09-cv-232 RB/DJS (D. N.M. 2010). Those decisions, however, rely almost exclusively on the *Spears* court in support of their conclusions. Thus, rejection of the *Spears* decision obviates the need to address the later decisions.

theoretically possible meaning expressly rejected many times by the Supreme Court is not a proper method of statutory construction. *See United States v. Overton*, 573 F.3d 679, 694 (9th Cir. 2009) (observing courts should not "manufacture ambiguity" where none exists).

The *Spears* court also pointed to the Sixth Amendment jurisprudence dealing with the right to trial by jury for support that the term "offense" is ambiguous. Because the Sixth Amendment itself does not use the term "offense," citation to this area of law is suspect. But setting that aside, the Supreme Court has interpreted the Sixth Amendment as providing a right to a trial by jury for prosecutions of "serious offenses." *Lewis v. United States*, 518 U.S. 322, 326 (1996). Over the years, there was a great deal of uncertainty regarding what qualified as a "serious offense." The *Spears* court pointed to a 1974 Supreme Court case where multiple violations were deemed a "serious offense" such that the right to a jury trial attached. *Codispoti v. Pennsylvania*, 418 U.S. 506 (1974). Based on this case, the *Spears* court argued if multiple violations stemming from a "single criminal transaction" can qualify as a "serious offense" under the Sixth Amendment, multiple violations arising from a single transaction might also qualify as a single offense under ICRA. There are two flaws in this reasoning.

The first problem in citing to the Sixth Amendment jurisprudence is that the relevant developments occurred *after* passage of ICRA. *See Duncan v. Louisiana*, 391 U.S. 145 (1968) (addressing right to jury trial for serious offenses but decided after passage of ICRA). Statutory interpretation requires looking to the meaning of words at the time the legislation was passed. Subsequent developments in tangentially related areas cannot render a term ambiguous that was not ambiguous at the time. *See BedRoc Ltd.*, 541 U.S. at 183 (requiring examination of meaning at time legislation was passed).

The second problem is that "serious offense" is a term of art. *See Lewis*, 518 U.S. at 325-26 (delineating "serious offense" versus "petty offense"). The Supreme Court coined the term "serious offense" and then adopted its own definition of that term. Possible ambiguities arising from a judicially created term of art should not be relied on to render ambiguous a statute not using that term of art.

The *Spears* court's attempt to find ambiguity where none exists is not convincing. In fact, even the *Spears* court recognized that its citations to the constitutional provisions was of limited assistance. *Spears*, 363 F. Supp. 2d at 1178 (recognizing these "precedents do not decide this case"). The meaning of "offense" was well known at the time of ICRA's passage and the Court will adopt that meaning here.[8]

### iv. Even If ICRA Were Ambiguous The Result Would Be The Same

Even if this Court were to agree that the phrase "any one offense" in ICRA is ambiguous, Petitioner's claims would still fail. If ICRA were deemed ambiguous, the next step would be to "consider the purpose, the subject matter, the context [and] and the legislative history" of the statute. *Cmty. Bank of Ariz. v. G.V.M. Trust*, 366 F.3d 982, 986 (9th Cir. 2004) (quotations omitted). These considerations, however, are helpful "only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Thus, to be helpful, the extrinsic material must be able to "shed a reliable light" on how the phrase "any one offense" should be interpreted. *Id.*

From the legislative history, it is clear there were "[t]wo distinct and competing purposes" behind ICRA. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 62 (1978). First, Congress wished to "strengthen[] the position of individual tribe members vis-a-vis the tribe." *Id.* Second, Congress wished "to promote the well-established federal policy of furthering Indian self-government." *Id.* Unfortunately, the legislative history does not contain any indication why Indian tribes were limited to imposing one year of imprisonment

---

[8] In light of the conclusion that ICRA is not ambiguous, ICRA's plain language can only be ignored if "a literal interpretation would thwart the purpose of the over-all statutory scheme or lead to an absurd result." *In re Cervantes*, 219 F.3d 955, 960 (9th Cir. 2000). As set out below, interpreting "offense" as covering each discrete criminal act would neither thwart the overall purpose of ICRA nor lead to an absurd result.

for "any one offense."[9]  In light of this absence, the *Spears* court engaged in some speculation regarding Congressional intent.  Even that speculation, however, does not resolve the issue.

Without citing to legislative history, *Spears* concluded the Congressional intent in passing ICRA was to provide that Indians facing serious charges would be prosecuted in federal court while Indians facing minor charges would be prosecuted in tribal court.  *Spears* believed Congress meant to limit the authority of tribal courts to impose lengthy prison sentences because the right to counsel did not apply in tribal courts.  *Spears*, 363 F. Supp. 2d at 1179 ("One right not afforded [by ICRA] was publicly funded counsel in tribal court.").  To highlight this concern, the *Spears* court provided an example regarding possible punishments for petty theft.  According to the tribal law applicable to the criminal defendant in *Spears*, an individual who stole "a rare coin worth $101 . . . face[d] up to six months in jail."  That conviction could occur without a right to counsel.  But if that same individual stole "a ten-coin collection [he] could face ten counts and be exposed to up to five years in jail with no right to publicly funded counsel."  *Id.* at 1180 n.11.  *Spears* believed Congress could not have meant to grant tribal courts authority to impose such lengthy sentences for a single criminal transaction in light of the possibility that a criminal defendant would not have counsel.  Accordingly, the phrase "any one offense" must refer to all criminal violations in the same "transaction."  While initially appealing, this reasoning is flawed.

The phrase "any one offense" may prevent some lengthy prison sentences, but even under the *Spears* court's construction of ICRA, tribal courts would remain free to impose years of imprisonment without providing publicly funded counsel.  Taking the example involving rare coins, if an individual were to steal ten coins from ten different individuals over a lengthy period of time, he would have committed ten discrete offenses.  Such thefts would not qualify as a single criminal transaction but, presumably, could be prosecuted in

---

[9] The parties have not pointed to any discussion of this issue and the Court has been unable to locate any such discussion on its own.

- 10 -

a single proceeding.  Thus, a tribal court would be free to impose up to ten consecutive sentences (*i.e.*, five years in jail), even though the Indian had no right to counsel.  In such a scenario, the *Spears* court's interpretation of "any one offense" would be of no help.  The speculation that Congress wished to prevent lengthy sentences only for criminals involved in factually related offenses has no basis in fact.

Further support for rejecting the *Spears* court's interpretation of ICRA is that the interpretation fundamentally undermines tribal authority, contrary to the express intent of ICRA.  *Santa Clara Pueblo*, 436 U.S. at 63 (stating ICRA was an attempt to "protect tribal sovereignty from undue interference").  Under *Spears*, an Indian tribe could impose a two-year term of imprisonment provided there were two sufficiently distinct criminal acts.  But if an individual committed the same criminal acts in a factually related context, the tribe would be able to impose no more than a one-year prison sentence.  There is no indication from ICRA's text, history, or context that Congress wished to limit tribal authority in this bizarre manner.  Absent some evidence, the Court will not impose a regime whereby a tribe's authority to punish an individual is dependent upon whether that individual's criminal violations are factually related.

### v.  Currently Pending Legislation

Finally, Petitioner mentions a currently pending bill in support of his position.  That bill increases to three years the maximum prison sentence a tribe may impose "for conviction of any 1 offense."  Tribal Law and Order Act of 2009, S. 797, § 304(b)(1)(B).  For purposes of this new limitation, the bill states "2 or more offenses may be considered separate offenses for purposes of charging and sentencing if each offense requires proof of an element that the other offenses do not."[10]  *Id.* at § 304(c).  There is no indication in the present legislative

---

[10] As originally introduced in the Senate, the bill included the three-year limitation on permissible prison terms but did not contain the section addressing when offenses will qualify as "separate offenses."  That section was added in response to comments from the Department of Justice, tribal leaders, the National Association of Criminal Defense Lawyers, and others.  Tribal Law and Order Act of 2009, Report from the Committee on Indian Affairs, October 29, 2009, at 5.  The additional section was meant to "clarif[y] that tribal

record that the authorization for consecutive sentences for distinct offenses constitutes a departure from present law.  The language of the pending bill is of no help to Petitioner.

**D. Conclusion**

The most sensible reading of ICRA's language is that Indian tribes may impose a one-year term of imprisonment for each criminal violation.  ICRA's one-year limitation has no impact when, as here, an individual was sentenced to eighteen months based on multiple criminal violations.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 40) is **ADOPTED IN PART AND REJECTED IN PART.**  The petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** the Motion for Summary Judgment (Doc. 26) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** the Motion to Expedite (Doc. 31) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** Petitioner shall submit a brief addressing whether this Court can issue a certificate of appealability in this case given that the dispositive issue is one of statutory construction.[11]  This brief shall be filed no later than **April 9, 2010**.  The response and reply are due as required by Local Rule.

DATED this 1st day of April, 2010.

_____
Roslyn O. Silver
United States District Judge

---

courts can charge suspects for multiple crimes and sentence offenders to consecutive sentences when at least one element of a crime differs from that of another crime."  *Id.*

[11] *See Garrott v. United States*, 238 F.3d 903, 905 (7th Cir. 2001) ("[A] debatable question of statutory interpretation is not enough to support a certificate of appealability."); *Mateo v. United States*, 310 F.3d 39, 41 (1st Cir. 2002) (noting that certificates of appealability are limited to "constitutional defects").